The next matter before us this morning is 23-1189, Estrada v. Smart. May it please the Court, Nicole Macielo representing Appellant Brian Estrada. The District Court here erred for three distinct reasons when it found Mr. Estrada needed to use a prison grievance process to exhaust a courthouse shooting that occurred miles from a jail. First, the plain text of the Prison Litigation Reform Act indicates that inmates only need to exhaust suits brought with respect to prison conditions. A courthouse shooting is plainly not a prison condition, so the exhaustion requirement does not apply. Second, the plain text of the Colorado Department of Corrections Administrative Grievance Policy does not cover incidents that occur outside Department of Corrections facilities. And third, even if the prison's policy may have covered incidents outside the prison, the policy was so opaque that a reasonable inmate would not have known they needed to exhaust the courthouse shooting, so Mr. Estrada did not need to exhaust. The District Court's contrary findings on any one of those questions constitutes reversible error. Let me, let me go over it again. Let's start with your last one first on whether it was opaque. You don't use the term opaque anywhere in your arguments to the District Court. How can we possibly find that you preserved this argument? So while we do not use the term opaque before the District Court, if you look at our arguments on pages 159 to 161 of the appendix, particularly page 160, there are repeated citations to Ross v. Blake, and we repeatedly argue that there was no available remedy here. So despite not using that word, You argue Ross, but you never indicate which of the three circumstances that are discussed in Ross you're relying on. You just throw in a citation to Ross. I mean, I don't think that's preservation. So, And the District Court didn't apparently see it because it didn't rule on it. The District Court did not see it. That is correct. But if you look at those arguments that are made within our broad argument that Mr. Estrada did not need to exhaust here, and there was no available remedy to him, he discusses the meaning of the term available. He talks about the materials that were provided to him. And between those and his reliance on Ross, we believe that fundamentally is an opacity question. So the District Court should have rolled up its sleeves and created an argument? You have a hard sell with me on this. Your Honor, fortunately, this court does not need to reach that question if it finds for us on either of our first two arguments. And if we look at the threshold question here of whether the PLRA even applies, the court doesn't need to look past the plain text of the PLRA to see that. That's another preservation issue. You argued the policy. You didn't argue the statute. So this court can review the applicability of the PLRA because the District Court explicitly passed on that question. If you look at page 199 of the appendix, the District Court says on this record, the court finds that the PLRA's exhaustion requirement applies to plaintiff's lawsuit. And per this court's doctrine in cases such as Sasone v. Empire Marketing Strategies, when the District Court explicitly considers or resolves an issue of law on the merits, an appellant can raise that issue on appeal and there's no forfeiture or waiver. So that issue is available for this court on de novo review. And so if we look at the District Court's finding there that the exhaustion requirement applies, the District Court erred because it did not look at the plain text of the PLRA. So the statute says suits brought with respect to prison conditions. There are at least five reasons why a courthouse shooting was not a prison condition. First, it occurred at a courthouse. Second, my client was miles away from a prison when he was shot. Third, he was at the courthouse on the business of another branch of government and nothing about his status as an inmate required him to be there. And on that note, fourth, he would have been there even if he wasn't in prison. And fifth, his injury could have easily been caused by a non-prison employee. So we believe each of those factors shows that this was not a prison condition. A courthouse shooting just doesn't meet the definition in the plain text. And that's really all the court needs to look to here. Can we look at 3626G2 of the PLRA that talks about the effects of actions by government officials on the lives of persons confined in prison? Yes. So, Your Honor, there are three reasons why that provision doesn't apply here. And first, 3626G itself says that it does not apply. Section G begins, as used in this section, indicating that Congress only intended those definitions to apply in that section. So Congress defined the term there because it wanted to make clear that the term did not carry its ordinary meaning in that specific section. And then second, section 1997E does have a definition section, that's subsection H, and Congress chose not to define prison conditions there, which indicates that Congress intended the words to carry their plain, ordinary meaning in 1997E. And then third, if we look at Porter v. Nestle, the Supreme Court itself chose not to rely on 3626G in Porter, which was a 1997E case, instead deciding to interpret the term prison conditions in the context of 1997E. And that's in footnote 3 of Porter. Yeah, I don't know that I read that footnote as expressing skepticism about the use. I think that's how you describe it in your brief. I mean, it didn't really say yay or nay about it. So it may not have explicitly said, do not use this, definitely use this definition, but the court there decided not to use that definition. And that shows that is a valid decision that can be made, that these are two separate statutes. And again, 3626G and 1997E, both of them have a textual basis that shows why that definition does not apply in 1997E cases. And turning to the PLRA, you would agree, allows prisons to adopt policies for exhaustion. That is correct. And here we have a policy that includes things that don't happen in prison, like people on supervised release, or would you agree with that? That is correct. So it isn't really fair to say that it's limited to things that happen within the walls of the prison, is it? So, Your Honor, I think that gets more to a different provision of the PLRA. We believe the department's policy speaks to whether there's an available remedy, not the definition of prison conditions. And on that issue, there is that provision that says people on supervised release in halfway houses are covered by the policy. That first covers who can bring a claim and who is obligated to use the policy, not necessarily what their claim relates to. And second, it carves out an exception to the policy to say, here's one instance where the policy is not going to apply in its ordinary natural scope. Again, it's a prison policy. So if the prison policy always applied outside of prison, the Department of Corrections would not need to have clarified that it applied to people on supervised release, on parole. That inclusion there shows that that is one narrow exception that the department was carving. And again, while we're speaking about the department's policy, there are, again, three reasons why the policy does not apply outside of prison. And first, outside of that parolee halfway house provision, there is absolutely no indication in the text that it applies outside of a prison. Well, there's no indication it doesn't. I mean, it says not limited to. It does say not limited to, but as mentioned in our brief, we believe that phrase not including but not limited to is modifying policies, conditions, and incidents within the facility to cover situations like what arose in Porter, where an inmate claimed that one instance of violence against them was not a prison condition. So we. That also goes to the point, there is no evidence that any prisoner has ever used this policy to grieve an incident outside of prison. The other side just has shown nothing to show that the policies ever used in this way. And again, it's a prison policy. And no one would expect a prison policy to apply outside of prison. Does the PLRA apply to the Department of Corrections after the van has left the prison and is en route to the courthouse? After. So, Your Honor, again, we would say that a prison condition within the meaning of the PLRA is an injury incurred as part of everyday prison life. So things that are within the prison's control and would not have happened if the plaintiff were not in prison. So if we are speaking about the van specifically taking him to the courthouse for that hearing, then because he would have. That is a much closer question than what happened here, because he does have to go to the courthouse on the business of another branch of government. And he would have to go to the courthouse either way. But if he was not in prison, he would not be in that specific van. We'll take it at the end of the route. Then they take the prisoner and they put him in the holding cell in the courthouse. And the Department of Corrections officer is there with him. If something goes wrong, he's under the control of the Department of Corrections officer. Would the PLRA apply to that? We would submit that that would not be a prison condition. And this court would not be the first. So you're saying it's no longer a close question after the prisoner exits the van into the holding cell. That's the line of demarcation? We think all of it is a tricky question that fortunately the court does not need to resolve in this case, since the facts are here. People cite our decisions. We need to worry about what we say and what we do. What about in the courtroom? Generally, I mean, we don't have an evidentiary record on this. Generally, the corrections officer is nearby and can control the movements of the prisoner. So wouldn't that be part of prison? Again, for those five reasons I mentioned earlier, we do not believe that is part of prison. Another officer who was there easily could have shot him. Another officer who was there is the officer who pushed him over and caused him to lose a shoe. So there are, we don't believe that the officers being there is enough to make it a prison condition. And with the court's permission, I'd like to reserve the rest of my time for rebuttal. Actually, counsel, but if we were to interpret this as strictly as you're suggesting, and I know you said we don't have to answer these questions, but I think Judge Murphy's correctly pointing out here that these are the natural questions that spring from this scenario. If we were to interpret this so strictly, doesn't that sort of counterman the entire purpose of exhaustion, which is, and purpose is, really is to allow prisoners to have a legitimate grievance procedure where they can say, this is wrong, this has been happening to me, to give the warden of these facilities an opportunity to take corrective action. If we interpret this so strictly, then it opens so many gaps that it eviscerates the purpose of the statute. Am I wrong about that? Well, we disagree that this would eviscerate the purpose of the statute for two reasons. First, there just are not going to be that many cases that arise in this context. There are not going to be that many courthouse shootings. There are not going to be that many inmates that get injured. But there will be a lot of scenarios where prisoners will claim something happened to them, and their rights were violated, maybe outside of the four corners of the prison itself. And again, we are not suggesting the court draws a strict geographic line here. We think the court needs to look at all of the considerations that occur. And so here, geography definitely factors in as to why this is clearly not a prison condition. But if you look at the PLRA and the policy underguarding it, the complaints allow the prison to take corrective action that would specifically satisfy the inmate. Here, there's nothing that could have been done that would have satisfied their suit. There's nothing that could have been done to build a better administrative record before it came before this court. Because it's not like there was a prison policy in place that dictated the behavior at issue here. It doesn't fall naturally within the PLRA's meant to allow prisons to administer themselves. Prisons are a place where the prison and the Department of Corrections controls every aspect of an inmate's life. And so the inmates need an opportunity and a way to resolve issues they have with the prison, with prison officers. And the grievance policy provides them that outlet. This is a situation that steps a little outside of those bounds. And again, Your Honor, Under Ross, didn't the Supreme Court say, if it's unclear and there's two reasonable interpretations, err on the side of exhaustion? The court did say that in Ross. But here, the court also set forth the opacity for this test and said, I don't think you have an opacity argument. I know you don't, Your Honor. Respectfully, again, if the court has doubts about the PLRA argument or about the opacity argument, this prison shooting still has to be within the confines of the policy. And we believe that a courthouse shooting is fundamentally not a prison condition. And that Mr. Estrada did not need to exhaust for this. Thank you. May it please the court. Abigail Smith, on behalf of APALE, Jacob Smart. Ms. Smith, let me ask you this so I don't have to interrupt you. Because it's just a record question. The record I understand is very limited. Is there anything in the record that indicates whether this court officer, whether it be a bailiff or whatever, whether or not that officer was armed? I'm sorry, which officer? The court officer. There was a bailiff or something. If the record doesn't indicate he was armed, one way or the other, that's fine. The record does not indicate. Okay. We respectfully request that this court affirm the district court because on the day of his attempted escape, Mr. Estrada was an inmate. He was an inmate on the day he filed his complaint. And he undisputedly failed to exhaust his administrative remedies. Now, here he seeks an unprecedented exception to the PLRA, that it does not apply to incidents outside of CDOC facilities. We disagree with that interpretation because he was subject to the PLRA because of his status as an inmate legally in the custody of CDOC, not because of his geographic location. So he traveled to the courthouse under conditions imposed by CDOC. He was there under conditions imposed by CDOC. And we think that's the distinguishing factor in this case. And to the extent that there's any lack of clarity, I think Ross really helps us here because the court took a look at the purposes of the PLRA. And it said if an exception undermines any of these purposes, then it cannot stand. It cannot possibly be an excuse that Congress intended. And I think the relevant question in this case is, does CDOC have less of an interest in alleged employee misconduct just because it occurred somewhere other than a CDOC facility? Do you rely on something in the statutory language of the PLRA to come to that conclusion? So I think we rely on everything that the Ross court relied on, which was their previous precedent, the statutory language of the PLRA, which is quite broad and does not indicate that Congress intended to create any categories. And then their view of the purposes of the PLRA. Do you have another question? No. Okay. And I think it's also important to note that the Supreme Court has repeatedly said there shouldn't be exceptions to the PLRA that allow an inmate to decide whether his claim is grievable under the PLRA or it's not. Turning to their second argument that it is unclear whether CDOC's policy applied to this incident, I turn again to Ross and their determination, the Supreme Court's determination there, that if the policy is open to multiple reasonable interpretations, then Congress has decided that the inmate must exhaust. And I think the response would be this isn't a reasonable interpretation. And we disagree with that. I think there are three good reasons to believe that this policy applies outside facilities. The language, including but not limited to, indicates that it has a broad scope. I think the second reason is that there are nine things that the policy says it does not cover. And none of those things are incidents outside a facility. And finally, the application to parolees and inmates in halfway houses indicates that the policy is intended to have a broad scope. But those are all facilities of CDOC. They're not the facilities of a different branch of government. That's true, but it does also apply to private facilities, which are by definition not CDOC facilities. But they're in contract with CDOC. An article of a court is not in a contract. Well, maybe it is on transportation. The Department of Corrections does transportation. Are there contracts? Yes. Are they in the record? No. All right, so what you're telling me is that the transportation function of CDOC is pursuant to a written contract. Well, it may be. It may be. It is not always. So we have to eliminate that. Yes. So if the bailiff that is employed by the court had actually shot Mr. Estrada here, would you agree that isn't required? They didn't have to comply with the PLRA? Or would you say even in that instance they would because his status is as an inmate? So it depends on his claims, Your Honor. In that case, we would argue that no CDOC employee is an appropriate defendant, and therefore the CDOC policy would not apply. Okay, but before you said it was the test was status as an inmate. So it's status as an inmate and a CDOC defendant? Right, because we're talking about the CDOC policy. So he must grieve according to CDOC's policy. Are we also talking about the statute? Was that preserved? So I would argue that it was not, Your Honor. None of these arguments about whether the PLRA applies outside of CDOC facilities were raised before the district court. Counsel, if it's status in a CDOC defendant that would trigger exhaustion, what if Estrada had escaped and, say, two days later, Mr. Smart encounters him at the grocery store. Knowing he's an escaped prisoner, the confrontation ensues and he shoots him there at the grocery store. Would Mr. Estrada have to exhaust then? Yes, Your Honor. Because that, again, goes back to the understanding that the Ross court had of the PLRA, which is that does CDOC have an interest in policing its employees' conduct? Does it matter that that employee conduct occurred in a prison facility or somewhere that is not a prison facility? So your bright line are not buildings or vehicles, but it's personnel. That's your bright line. It involves anybody with the Department of Corrections, PLRA, exhaustion clause. So we're reading the two things together. So we're saying that the PLRA itself applies because you are an inmate. And we are saying you have to exhaust according to CDOC policy, and CDOC policy applies to actions by employees. And I also wanted to respond to this argument that the policy was opaque and just state that that is an argument about whether the grievance procedure is accessible to the inmate. And here we have evidence that Mr. Estrada had successfully navigated that policy on at least three occasions the same year as his attempted escape. And so the evidence suggests that the policy was not opaque to him. And then I wanted to address the reply brief raises two procedural arguments, alleges that the district court committed two procedural errors. The first, that exhaustion is an issue for the jury, which is something that five other circuits have considered and dismissed because it undermines the PLRA's purpose of lessening the number of inmate lawsuits and protecting the federal court's docket from having to go through the process of these inmate lawsuits. And the second is that... Well, let me stop you there. Yeah. Here, the district court said that there are no triable issues of fact. So it doesn't matter who the fact finder is, does it? That's correct, Your Honor. It's the same reason that we argue there's no basis for an evidentiary hearing. There's a suggestion in the briefs that Mr. Estrada was not given a full copy of the grievance policy, but the introductory materials on the record state clearly that that policy is available to all inmates in the library. CDOC does not actually provide copies to the inmates. If there are no further questions... It doesn't appear that there are. Thank you. Thank you. And I think she's out of time. All right. We will take this matter under advisement. Thank you for your argument today.